Commonwealth of Massachusetts
WORCESTER SUPERIOR COURT
Case Summary
Civil Docket

## WOCV2006-02538
### Engstrom v Advanced Cell Technology Inc

| | | | | | |
|---|---|---|---|---|---|
| File Date | 12/15/2006 | Status | Disposed: transfered to other court (dtrans) | | |
| Status Date | 01/29/2007 | Session | B - Civil B (18 Worcester) | | |
| Origin | 1 | Case Type | A99 - Misc contract | | |
| Lead Case | | Track | F | | |

| | | | | | |
|---|---|---|---|---|---|
| Service | 03/15/2007 | Answer | 05/14/2007 | Rule12/19/20 | 05/14/2007 |
| Rule 15 | 05/14/2007 | Discovery | 10/11/2007 | Rule 56 | 11/10/2007 |
| Final PTC | 12/10/2007 | Disposition | 02/08/2008 | Jury Trial | No |

### PARTIES

**Plaintiff**
Gunnar Engstrom
Active 12/15/2006

**Private Counsel 349240**
John O Mirick
Mirick O'Connell DeMallie & Lougee
100 Front Street
Suite 1700
Worcester, MA 01608-1477
Phone: 508-791-8500
Fax: 508-791-8502
Active 12/15/2006 Notify

**Defendant**
Advanced Cell Technology Inc
Served: 12/27/2006
Served (answr pending) 12/27/2006

**Private Counsel 631392**
David A Anderson
Pierce Atwood
One New Hampshire Avenue
Suite 350
Portsmouth, NH 03801
Phone: 603-433-6300
Fax:
Active 01/30/2007 Notify

### ENTRIES

| Date | Paper | Text |
|---|---|---|
| 12/15/2006 | 1.0 | Complaint civil action cover sheet and Rule 29 statement filed |
| 12/15/2006 | | Origin 1, Type A99, Track F. |
| 12/15/2006 | | Filing fee paid in the amount of $275.00 including $15.00 surcharge and $20.00 security fee. |
| 12/29/2006 | 2.0 | SERVICE RETURNED (summons): Advanced Cell Technology Inc, service made on 12/27/2007 (agent in charge service) |
| 01/29/2007 | 3.0 | Deft. Advanced Cell Technology Inc. notice of Removal to the JS District Court of Massachusetts |
| 01/30/2007 | | Certified copies mailed to Atty. David A. Anderson |

### EVENTS

A true copy by photostatic process
Attest
Asst. Clerk

| CIVIL ACTION COVER SHEET | Trial Court of Massachusetts **SUPERIOR COURT DEPARTMENT** County: Worcester | Docket Number 06-2538p |
| --- | --- | --- |

| PLAINTIFF(S) Gunnar Engstrom | DEFENDANT(S) Advanced Cell Technology, Inc. |
| --- | --- |
| **ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE** John O. Mirick, Esq., Mirick, O'Connell 100 Front St., Worcester, MA 01608 Board of Bar Overseers number: 349240 | **ATTORNEY** (if known) **FILED** DEC 15 2006 ATTEST: *Francis G. Spl* |

### Origin code and track designation

Place an x in one box only:
[ X ] 1. F01 Original Complaint
[ ] 2. F02 Removal to Sup.Ct. c. 231, s.104
    (Before trial)         (F)
[ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)

[ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
[ ] 5. F05 Reactivated after rescript;relief from judgment/
    Order (Mass.R.Civ.P. 60)         (X)
[ ] 6. E10 Summary Process Appeal      (X)

### TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
| --- | --- | --- | --- |
| A99 | Contract-Stock Warrant | ( F ) | ( ) Yes ( X ) No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
**(Attach additional sheets as necessary)**

A.  Documented medical expenses to date:
    1.  Total hospital expenses ......................................... $............
    2.  Total Doctor expenses ......................................... $............
    3.  Total chiropractic expenses ......................................... $............
    4.  Total physical therapy expenses ......................................... $............
    5.  Total other expenses (describe) ......................................... $............
                                Subtotal $............
B.  Documented lost wages and compensation to date ......................... $............
C.  Documented property damages to date ......................... $............
D.  Reasonably anticipated future medical and hospital expenses ......... $............
E.  Reasonably anticipated lost wages ......................... $............
F.  Other documented items of damages (describe)
                                           $............

G.  Brief description of plaintiff's injury, including nature and extent of injury (describe)

A true copy by photostatic process
Attest:  *[signature]*                           $............
**Asst. Clerk**                                 TOTAL: $............

### CONTRACT CLAIMS
**(Attach additional sheets as necessary)**
Provide a detailed description of claim(s): Defendant failed to register stock as required by Stock Warrant, resulting in delay in sale of stock, and sale at lower price
                                                TOTAL  $ 108,169

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT    None

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."
Signature of Attorney of Record _____*John O. Mirick*_____  DATE: 12/15/06

A.O.S.C. 2003

## CIVIL ACTION COVER SHEET INSTRUCTIONS
## SELECT CATEGORY THAT BEST DESCRIBES YOUR CASE

| | CONTRACT | | | REAL PROPERTY | | | MISCELLANEOUS | |
|---|---|---|---|---|---|---|---|---|
| A01 | Services, labor and materials | (F) | C01 | Land Taking (eminent domain) | (F) | E02 | Appeal from Administrative Agency G L c 30A | (X) |
| A02 | Goods sold and delivered | (F) | C02 | Zoning Appeal, G.L.c.40A | (F) | E03 | Action against Commonwealth /Municipality, G L c.258 | (A) |
| A03 | Commercial Paper | (F) | C03 | Dispute concerning title | (F) | E05 | All Arbitration | (X) |
| A08 | Sale or lease of real estate | (F) | C04 | Foreclosure of Mortgage | (X) | E07 | G.L. c.112,s.12S (Mary Moe) | (X) |
| A12 | Construction Dispute | (A) | C05 | Condominium lien &charges | (X) | E08 | Appointment of Receiver | (X) |
| A99 | Other (Specify) | (F) | C99 | Other (Specify) | (X) | E09 | General Contractor bond, G L c149,s.29,29a | (A) |
| | **TORT** | | | **EQUITABLE REMEDIES** | | E11 | Workers' Compensation | (X) |
| B03 | Motor Vehicle Negligence- | (F) | D01 | Specific performance of contract | (A) | E12 | G.L.c.123A,s. 12 (SDP Commitment) | (X) |
| | Personal Injury/Property Damage | | D02 | Reach and Apply | (F) | E14 | G.L. c. 123A, s. 9 (SDP Petition) | (X) |
| B04 | Other negligence- | (F) | D06 | Contribution or Indemnification | (F) | E15 | Abuse Petition, G L c.209A | (X) |
| | personal injury/property damage | | D07 | Imposition of Trust | (A) | E16 | Auto Surcharge Appeal | (X) |
| B05 | Products Liability | (A) | D08 | Minority Stockholder's Suit | (A) | E17 | Civil Rights Act,G.L.c.12,s.11H | (X) |
| B06 | Malpractice-Medical | (A) | D10 | Accounting | (A) | E18 | Foreign Discovery Proceeding | (X) |
| B07 | Malpractice-Other (Specify) | (A) | D12 | Dissolution of Partnership | (F) | E19 | Sex Offender Registry G.L.c. 178M,s.6 | (X) |
| B08 | Wrongful death,G.L.c.229,s.2A | (A) | D13 | Declaratory Judgment G.L.c. 231A | (A) | E25 | Pleural Registry (Asbestos cases) | |
| B15 | Defamation (Libel-Slander) | (A) | D99 | Other (Specify) | (F) | E95 | Forfeiture G.L.c. 94C,s.47 | (F) |
| B19 | Asbestos | (A) | | | | E96 | Prisoner Cases | (F) |
| B20 | Personal Injury-Slip&Fall | (F) | | | | E97 | Prisoner Habeas Corpus | (X) |
| B21 | Environmental | (F) | | | | E99 | Other (Specify) | (X) |
| B22 | Employment Discrimination | (F) | | | | | | |
| B99 | Other (Specify) | (F) | | | | | | |

TRANSFER YOUR SELECTION TO THE FACE SHEET.

EXAMPLE:

| CODE NO. | TYPE OF ACTION (SPECIFY) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence-Personal Injury | (F) | [x] Yes [ ] No |

### SUPERIOR COURT RULE 29

DUTY OF THE PLAINTIFF. The plaintiff or his/her counsel shall set forth, on the face sheet (or attach additional sheets as necessary), a statement specifying in full and itemized detail the facts upon which the plaintiff then relies as constituting money damages. A copy of such civil action cover sheet, including the statement as to the damages, shall be served on the defendant together with the complaint. If a statement of money damages, **where appropriate is not filed, the Clerk-Magistrate shall transfer the action as provided in Rule 29(5)(C).**

DUTY OF THE DEFENDANT. Should the defendant believe the statement of damages filed by the plaintiff in any respect inadequate, he or his counsel may file with the answer a statement specifying in reasonable detail the potential damages which may result should the plaintiff prevail. Such statement, if any, shall be served with the answer.

A CIVIL ACTION COVER SHEET MUST BE FILED WITH EACH COMPLAINT, BUFF COLOR PAPER.

FAILURE TO COMPLETE THIS COVER SHEET THOROUGHLY AND ACCURATELY MAY RESULT IN DISMISSAL OF THIS ACTION.



FILED
DEC 1 5 2006
ATTEST:

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
WORCESTER DIVISION
CIVIL ACTION NO.

| | |
|---|---|
| GUNNAR ENGSTROM,<br>    Plaintiff<br><br>V.<br><br>ADVANCED CELL TECHNOLOGY, INC.,<br>    Defendant | **COMPLAINT** |



## Introduction

This is a complaint by Gunnar Engstrom for damages caused when Advanced Cell Technology, Inc. improperly placed a restriction on stock issued to Gunnar Engstrom when he exercised his stock warrants.

## Parties

1.      Gunnar Engstrom ("Engstrom") resides in London, England.  He was formerly employed by Advanced Cell Technology, Inc., and worked out of the Worcester offices of Advanced Cell Technology, Inc.

2.      Advanced Cell Technology, Inc. ("ACT") is a duly organized corporation with a usual place of business in Worcester, Massachusetts.

## Claims

3.      Engstrom was employed by ACT in 2001 as the Chief Financial Officer to help manage a turnaround of ACT.  The turnaround was successful.  When ACT moved its headquarters to California after the turnaround, Engstrom decided to leave ACT.  He negotiated

a termination package with ACT that included a Warrant Agreement for warrants for 100,000 shares of common stock ("the Warrant Agreement"). A copy of the Warrant Agreement is attached as Exhibit A.

4.      In his role as CFO, Engstrom was familiar with the other warrant agreements for ACT stock. He was aware that they were subject to restrictions. The Warrant Agreement was issued as part of a negotiated settlement following a dispute, where Engstrom alleged a breach of his employment contract, including a promise for a substantially larger number of warrants for shares that would be subject to restrictions. It was important to Engstrom, and a key point of the settlement, that the shares issuable under the Warrant Agreement would not be subject to restrictions.

5.      Engstrom negotiated a "piggy-back registration rights" provision in the Warrant Agreement for the common stock to be issued upon exercise of his warrants. A "piggy-back registration" is a procedure that applies when a corporation is filing a registration statement with the Securities and Exchange Commission. In addition to the stock offering for which the corporation is filing a registration statement, the stock to be issued upon exercise of the warrants is "piggy-backed" onto the corporation's registration statement, at no expense to the holder of the warrants. The "piggy-back registration rights" are in Section 7 of Engstrom's Warrant Agreement.

6.      If stock is not registered, there are restrictions on when and how stock can be traded.

7.      ACT agreed "to use its best efforts to prepare and file" a piggy-back registration statement and "to cause such registration statement to become effective." ACT knew that Engstrom was planning on exercising his warrants and selling his stock as soon as ACT filed a

registration statement.  ACT knew that it was important to Engstrom that the stock become
registered.

8.      Engstrom reasonably relied on ACT's agreement to register the stock to be issued
upon exercise of his warrants, and signed the Settlement Agreement which was part of his
termination package.  ACT then issued the Warrant Agreement in April, 2005.

9.      After the issuance of the Warrant Agreement, ACT did file a registration
statement.  In breach of its obligations to Engstrom in the Warrant Agreement, ACT failed to
exercise its best efforts to do a "piggy-back registration" of the stock to be issued when
Engstrom exercised his warrants.

10.      In September, 2005, after the ACT registration, Engstrom exercised his warrants.
ACT issued stock subject to Rule 144 restrictions, which prevent any sales within one year, and
which limit the volume of shares that can be sold.  As a result, Engstrom could not immediately
sell the shares that he received by the exercise of his warrants.

11.      In September, 2005, when he exercised his warrants and wanted to sell his shares,
the average selling price of ACT common stock was $2.54 a share.  In March, 2006, when he
was able to sell his shares, the average selling price was $1.35 a share.  As a result, the total
proceeds received by Engstrom from the sale of his shares were $108,169 less than he would
have received if ACT has complied with its obligations under the Warrant Agreement for a
"piggy-back registration" and issued unrestricted shares.

12.      As a result of ACT's breach of contract, Engstrom has suffered damages.


WHEREFORE, the plaintiff Gunnar Engstrom demands that this Court find that
Advanced Cell Technology, Inc. has breached its contract, determine the damages sustained by

Gunnar Engstrom, and enter judgment against Advanced Cell Technology, Inc. for that amount,

together with interest and costs.

           GUNNAR ENGSTROM,

           By his attorney,

           John O. Mirick, BBO #349240
           Mirick, O'Connell, DeMallie & Lougee, LLP
           100 Front Street
           Worcester, MA 01608-1477
           Phone: (508) 791-8500
           Fax:   (508) 791-8502

A true copy by photostatic process
Attest:
Asst. Clerk

## ADVANCED CELL TECHNOLOGY, INC.
## WARRANT AGREEMENT

This Warrant Agreement certifies that Gunnar Engstrom (the "Holder"), is the owner of 100,000 warrants (subject to adjustment as provided herein), each of which represent the right to subscribe for and purchase from A.C.T. Holdings, Inc., a Nevada corporation (the "Company"), one share of the Company's common stock, $.001 par value, (such common stock, including any stock into which it may be changed, reclassified or converted, is herein referred to as the "Common Stock") ("Warrants") at the purchase price of $0.25 per share (subject to adjustment as provided herein) (the "Exercise Price").

**THE SECURITIES REPRESENTED BY THIS AGREEMENT HAVE NOT BEEN REGISTERED PURSUANT TO THE PROVISIONS OF THE SECURITIES ACT OF 1933 FROM REGISTRATION AS AMENDED ("ACT"), AND HAVE BEEN ISSUED IN RELIANCE UPON THE EXEMPTION, SPECIFIED IN SECTION 4(2) OF THE ACT AND RULE 506 OF REGULATION D PROMULGATED PURSUANT THERETO. WITHOUT SUCH REGISTRATION, SUCH SECURITIES MAY NOT BE SOLD, TRANSFERRED, ASSIGNED, PLEDGED, HYPOTHECATED OR OTHERWISE DISPOSED OF, EXCEPT UPON DELIVERY TO THE COMPANY AND ITS TRANSFER AGENT OF AN OPINION OF COUNSEL SATISFACTORY TO THE COMPANY AND ITS TRANSFER AGENT THAT SUCH REGISTRATION IS NOT REQUIRED FOR SUCH TRANSFER; OR THE SUBMISSION TO THE COMPANY OR ITS TRANSFER AGENT OF SUCH OTHER EVIDENCE AS MAY BE SATISFACTORY TO THE COMPANY AND ITS TRANSFER AGENT TO THE EFFECT THAT ANY SUCH TRANSFER SHALL NOT BE IN VIOLATION OF THE ACT, APPLICABLE STATE SECURITIES LAWS OR ANY RULE OR REGULATION PROMULGATED PURSUANT THERETO.**

The Warrants are subject to the following provisions, terms and conditions:

### 1. EXERCISE OF WARRANTS

**Exercise of Warrants.** The Warrants may be exercised by the Holder, in whole or in part (but not as to a fractional share of Common Stock), by surrender of this Warrant Agreement at the principal office of the Company located at 381 Plantation Street, Worcester, MA 01605 (or such other office or agency of the Company as may be designated by notice in writing to the Holder at the address of such Holder appearing on the books and records of the Company), with the appropriate form attached hereto duly exercised, at any time within the period of April 1, 2005 through April 1, 2010 (the "Exercise Period") and by payment to the Company by certified check or bank draft of the purchase price for such shares of the Common Stock or an election to exercise the warrants on a cashless basis. The Company agrees that the shares of Common Stock so purchased shall be deemed to be issued to the Holder as the record owner of such shares of Common Stock as of the close of business on the date on which the Warrant Agreement shall have been surrendered and payment made for such shares of Common Stock or the cashless exercise option is duly exercised. Certificates representing the shares of Common Stock so purchased shall be delivered to the Holder promptly and in no event later than ten(10) days after the Warrants shall have been so exercised. The Company shall be responsible for any damages caused as a direct result of a failure to deliver certificates on a timely basis.

{W0321493.1}

**EXHIBIT**

**A**

This Warrant Agreement is entered into pursuant to that certain Settlement Agreement dated as of January 28, 2005, by and among the Company and the Holder, and is subject to the provisions thereof.

## 2. ADJUSTMENTS AND NOTICES

**A. Adjustments.** The Exercise Price and the number of shares of Common Stock issuable upon exercise of each Warrant shall be subject to adjustment from time to time, as follows:

**(1) Stock Dividends; Stock Splits; Reverse Stock Splits; and Reclassifications.** In the event that the Company shall (a) pay a dividend with respect to its capital stock in shares of Common Stock, (b) subdivide its issued and outstanding shares of Common Stock, (c) combine its issued and outstanding shares of common stock into a smaller number of shares of any class of Common Stock or (d) issue any shares of its capital stock in a reclassification of the Common Stock (including any such reclassification in connection with a merger, consolidation or other business combination in which the Company is the continuing corporation) (any one of which actions is herein referred to as an "Adjustment Event"), the number of shares of Common Stock purchasable upon exercise of each Warrant immediately prior to the record date for such Adjustment Event shall be adjusted so that the Holder shall thereafter be entitled to receive the number of shares of Common Stock or other securities of the Company (such other securities thereafter enjoying the rights of shares of Common Stock pursuant to this Warrant Agreement) that such Holder would have owned or have been entitled to receive after the happening of such Adjustment Event, had such Warrant been exercised immediately prior to the happening of such Adjustment Event or any record date with respect thereto. An adjustment made pursuant to this Section 2A(1) shall become effective immediately after the effective date of such Adjustment Event retroactive to the record date, if any, for such Adjustment Event.

**(2) Adjustment of Exercise Price.** Whenever the number of shares of Common Stock purchasable upon the exercise of each Warrant is adjusted pursuant to Section 2A(1) of this Warrant Agreement, the Exercise Price for each share of Common Stock payable upon exercise of each Warrant shall be adjusted by multiplying such Exercise Price immediately prior to such adjustment by a fraction, the numerator of which shall be the number of shares of Common Stock purchasable upon the exercise of each Warrant immediately prior to such adjustment, and the denominator of which shall be the number of shares of Common Stock so purchasable immediately thereafter.

**(3) De Minimis Adjustments.** No adjustment in the number of shares of Common Stock purchasable pursuant to this Warrant Agreement shall be required, unless such adjustment would require an increase or decease of at least one percent (1%) in the number of shares of Common Stock purchasable upon an exercise of each Warrant; provided, however, that any adjustments which by reason of this Section 2A(3) are not required to be made shall be carried forward and taken into account in any subsequent adjustment. All calculations shall be made to the nearest full share.

**B. Notice of Adjustment.** Whenever the number of shares of Common Stock purchasable upon the exercise of each Warrant or the Exercise Price is adjusted, as herein

provided, the Company shall promptly notify the Holder in writing (such writing referred to as an "Adjustment Notice") of such adjustment or adjustments and shall deliver to the Holder a certificate of a firm of independent public accountants selected by the Board of Directors of the Company (who may be the regular accountants employed by the Company) or of the Independent Financial Expert, if any, which makes a determination of Current Market Value with respect to any such adjustment setting forth the number of shares of Common Stock purchasable upon the exercise of each Warrant and the Exercise Price after such adjustment, setting forth a brief statement of the facts requiring such adjustment and setting forth the computation by which such adjustment was made.

C. **Amendment of Warrant Agreement.** This Warrant Agreement may not be changed because of any change in the Exercise Price or in the number of shares of Common Stock purchasable upon the exercise of a Warrant. The Company may at the time in the Company's sole discretion make any change in the form of a warrant agreement that the Company may deem appropriate and that does not affect the substance thereof and any warrant agreement thereafter issued, whether in exchange or substitution for any outstanding warrant agreement or otherwise, may be in the form so changed.

D. **Notice to Holder of Record Date, Dissolution, Liquidation or Winding Up.** The Company shall cause to be mailed (by first class mail, postage prepaid) to the Holder notice of the record date for any dividend, distribution or payment, in cash or in kind (including, without limitation, evidence of indebtedness and assets), with respect to shares of Common Stock at least twenty (20) calendar days before any such date. In the event that at any time after the date hereof, there shall be a voluntary or involuntary dissolution, liquidation or winding up of the Company, then the Company shall cause to be mailed (by first class mail, postage prepaid) to the Holder at the Holder's address as shown on the books of the Company, at the earliest practicable time (and, in any event, not less than twenty (20) calendar days before any date set for definitive action), notice of the date on which such dissolution, liquidation or winding up shall take place, as the case may be. The notices referred to above shall also specify the date as of which the holders of the shares of Common Stock of record or other securities underlying the Warrants shall be entitled to receive such dividend, money or the property deliverable upon such dissolution, liquidation or winding up, as the case may be (the "Entitlement Date"). In the case of a distribution of evidence of indebtedness or assets (other than in dissolution, liquidation or winding up), if the Holder elects to exercise the Warrants in accordance with Section 1 of this Warrant Agreement and become a holder of the Common Stock on the Entitlement Date, the Holder shall thereafter receive the evidence of indebtedness or assets distributed in respect of shares of Common Stock.

E. **Fractional Interest.** The Company shall not be required to issue fractional shares of Common Stock on the exercise of the Warrants. If more than one Warrant shall be presented for exercise in full at the same time by the same holder, the number of full shares of Common Stock which shall be issuable upon such exercise shall be computed on the basis of the aggregate number of whole shares of Common Stock purchasable on exercise of the Warrants so presented. If any fraction of a share of Common Stock would, except for the provisions of this Section 2E be issuable on the exercise of the Warrants (or specified proportion thereof), the Company shall pay an amount in cash calculated by it to be equal to the then fair value of one share of Common Stock, based upon the average closing price of the Common Stock on the OTC Bulletin Board (or other exchange if the Common Stock

becomes listed on an exchange) for the thirty (30) days preceding the date of determination , multiplied by such fraction computed to the nearest whole cent.

## 3. RESERVATION AND AUTHORIZATION OF COMMON STOCK

The Company covenants and agrees (a) that all shares of Common Stock which may be issued upon the exercise of the Warrants will, upon issuance, be validly issued, fully paid and nonassessable and free of all insurance or transfer taxes, liens and charges with respect to the issue thereof; (b) that during the Exercise Period, the Company will at all times have authorized, and reserved for the purpose of issue or transfer upon exercise of the Warrants, sufficient shares of Common Stock to provide for the exercise of the Warrants, and (c) that the Company will take all such action as may be necessary to ensure that the shares of Common Stock issuable upon the exercise of the Warrants may be so issued without violation of any applicable law or regulation, or any requirements of any domestic securities exchange upon which any capital stock of the Company may be listed; provided, however, that nothing contained herein shall impose upon the Company any obligation to register the Warrants or the Common Stock pursuant applicable securities laws. In the event that any securities of the Company, other than the Common Stock, are issuable upon exercise of the Warrants, the Company will take or refrain from taking any action referred to in clauses (a) through (c) of this Section 3 as though such clauses applied, mutatis mutandis, to such other securities then issuable upon the exercise the Warrants.

## 4. NO VOTING RIGHTS

This Warrant Agreement shall not entitle the Holder to any voting rights or other rights as a stockholder of the Company.

## 5. CALL OF WARRANTS BY THE COMPANY

The Company shall have the right to force the purchase, at the Exercise Price, of any or all Warrants on or after the date (the "Call Date") on which: (i) the price ("price" shall be determined by taking the average between the bid and ask prices over the preceding 30 day period) of the Company's common stock as reported on the Over the Counter Bulletin Board, or other nationally recognized exchange, as the case may be, equals or exceeds $3.17 per share; and (ii) the average trading volume of the Company's common stock on the Over the Counter Bulletin Board or other nationally recognized exchange, as the case may be, equals or exceeds 20,000 shares per day over the previous 30 day period, (collectively, the "Conditions to Call"). Should the Company determine that the Conditions to Call have been satisfied, the Company shall provide the Holder with written notice of its intent to call the warrants. The Holder shall have ten (10) days from the date appearing on such notice to exercise the Warrants as specified herein and tender the Exercise Price to the Company. If the Holder fails to exercise the warrants within the specified period, all Warrants issued in the name of Holder shall, without any other action by the Company, terminate.

## 6. EXERCISE OR TRANSFER OF WARRANTS OR COMMON STOCK

The Holder agrees to be obligated by any and all provisions with respect to any and all limitations, including limitations imposed by the Securities Act of 1933, as amended, regarding the Warrants and the shares of Common Stock or other securities issuable upon

[W0528493.1]                                4

exercise of the Warrants. The Holder acknowledges and agrees that he or she is aware that there are substantial restrictions on the transferability of the Warrants and the shares of Common Stock or other securities issuable upon exercise of the Warrants. The undersigned also acknowledges and 5 agrees that he or she shall be responsible for compliance with all conditions on transfer imposed by a Securities Administrator of any state, province or territory and for any expenses incurred by the Company for legal and accounting services in connection with reviewing such a proposed transfer and issuing opinions in connection therewith.

## 7. PIGGY-BACK REGISTRATION RIGHTS

Subject to the exceptions specified in this Section 7, in the event that the Company decides to file a registration statement with the Securities and Exchange Commission ("Commission") pursuant to the 1933 Act, the Company shall use its best efforts to include in that registration statement, for registration, all or any portion of the common stock issuable upon exercise of these Warrants. The Company agrees to use its best efforts to prepare and file with the Commission such amendments and supplements to the registration statement and the prospectus used in connection with such registration statement necessary to comply with the provisions of the 1933 Act and to cause such registration statement to become effective. The Company shall pay all expenses and fees incurred by Holder in registering all or any portion of the shares issuable upon exercise of these Warrants. The exceptions to the piggy-back registration rights granted herein (i.e., Holder will not have the right to request that the Company register the common stock underlying the Warrants) are as follows: (i) the registration statement filed by the Company is related or a condition to a secondary offering conducted by the Company; or (ii) the registration statement filed by the Company seeks to register stock whose aggregate value (exclusive of the common stock issuable upon exercise of the Warrants) is less than Ten Million Dollars ($10,000,000). Provided, however, that the foregoing exceptions shall not apply in the event any shares of common stock (or shares of common stock underlying warrants or options issued by the Company) held by directors, officers or reporting persons under Section 16 of the Securities Exchange Act of 1934, as amended, are registered in any such offering.

## 8. MERGERS, CONSOLIDATIONS, ETC.

Except as may otherwise be provided, if the Company shall merge or consolidate with another corporation, the Holder shall thereafter have the right, upon exercise of the rights specified in this Warrant Agreement and payment of the Exercise Price, to receive solely the kind and amount of shares of stock (including, if applicable, Common Stock), other securities, property or cash or any combination thereof receivable by a holder of the number of shares of Common Stock for which this Warrant Agreement might have been exercised immediately prior to such merger or consolidation (assuming, if applicable, that the holder of such Common Stock failed to exercise its rights of election, if any, as to the kind or amount of shares of stock, other securities, property or cash or combination thereof receivable upon such merger or consolidation). B. In case of any reclassification or change of the shares of Common Stock issuable upon exercise of (other than elimination or par value, a change in par value, or from par value to no par value, or as the result of a subdivision or combination of shares (which is provided for elsewhere herein), but including any

reclassification of the shares of Common stock into two (2) or more classes or series of shares) or in case of any merger or consolidation of another corporation into the Company in which the Company is the surviving corporation and in which there is a reclassification or change of the shares of Common Stock (other than a change in par value, or from par value to no par value, or as a result of a subdivision or combination (which is provided for elsewhere herein), but including any reclassification of the shares of Common Stock, the Holder shall thereafter have the right, upon exercise hereof and payment of the Exercise Price, to receive solely the kind and amount of shares of stock (including, if applicable, Common Stock), other securities, property or cash or any combination thereof receivable upon such reclassification, change, merger or consolidation by a holder of the number of shares of Common Stock for which the rights specified in this Warrant Agreement might have been exercised immediately prior to such reclassification, change, merger or consolidation (assuming, if applicable, that the holder of such Common Stock failed to exercise its rights of election, if any, as to the kind or amount of shares of stock, other securities, property or cash or combination thereof receivable upon such reclassification, change, merger or consolidation).

### 10. RIGHTS AND OBLIGATIONS SURVIVE EXERCISE OF WARRANTS

The rights and obligations of the Company, of the Holder, and of the holders of shares of Common Stock or other securities issued upon exercise of the Warrants, specified in this Warrant Agreement shall survive the exercise of the Warrants.

Dated: ~~April 1, 2005~~   November 30, 2004

COMPANY

A.C.T. HOLDINGS, INC., a Nevada corporation

By: _____
William M. Caldwell, IV
Its Chief Executive Officer

HOLDER

_____
Gunnar Engstrom

12/29

# COMMONWEALTH OF MASSACHUSETTS

Worcester, ss.

~~FILED~~

**DEC 2 9 2006**

ATTEST:

_Frank A. Ford_

CLERK

Superior Court
Department of the Trial Court
of the Commonwealth
Civil Action

No.   06-2538B

GUNNAR ENGSTROM,                                                        )
                                                                       )
                                                                       )
                                                                       )
                                               Plaintiff(s)            )
                                                                       )       **SUMMONS**
                         v.                                            )
                                                                       )
ADVANCED CELL TECHNOLOGY, INC.,                                        )
                                                                       )
                                              Defendant(s)             )

✳      To the above-named Defendant: 381 Plantation Street, Biotech V, Worcester, MA 01605

      You are hereby summoned and required to serve upon ....John O. Mirick, Esq. of
Mirick O'Connell ......................................................... plaintiff's attorney,
whose address is ...100 Front Street, Worcester, MA 01608 .........................
an answer to the complaint which is herewith served upon you, within 20 days after
service of this summons upon you, exclusive of the day of service. If you fail to do so,
judgement by default will be taken against you for the relief demanded in the complaint.
You are also required to file your answer to the complaint in the SUPERIOR COURT
Department of the Trial Court at WORCESTER either before service upon plaintiff's
attorney or within a reasonable time thereafter.

      Unless otherwise provided by Rule 13 (a), your answer must state as a counter-
claim any claim which you may have against the plaintiff which arises out of the
transaction of occurrence that is the subject matter of the plaintiff's claim or you will
thereafter be barred from making such claim in any other action.

      Witness, BARBARA J. ROUSE, ......., Esquire, at Worcester, the.......20th...........
day of .....December................................in the year of our Lord two thousand and
.six,...............

2 ½

A true copy by photostatic process
Attest: _J. Sullivan_
Asst. Clerk

_Frank A. Ford_

Clerk

NOTES:
1.  This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2.  When more than one defendant is involved, the names of all defendants should appear in the caption.
    If a separate summons is used for each defendant, each should be addressed to that particular defendant.

        PLEASE CIRCLE TYPE OF ACTION INVOLVED: TORT — MOTOR VEHICLE TORT —
        CONTRACT EQUITABLE RELIEF — CH 93A — MEDICAL MALPRACTICE — OTHER.

✳          NOTICE TO DEFENDANT: You need not appear personally in court to answer the complaint, but
       if you claim to have a defense, either you or your attorney must serve a copy of your written
       answer within 20 days as specified herein AND also file the original in the Clerk's Office, Superior
       Court, Room 21.

M/O



**Worcester County Sheriff's Office** • P.O. Box 1066 • Worcester, MA 01613 • (508) 752-1100

*Worcester, ss*

12/28/2006

I hereby certify and return that on 12/27/2006 at 12:00pm I served a true and attested copy of the Summons and Complaint, Civil Action Cover Sheet, Exhibits A in this action in the following manner:  To wit, by delivering in hand to MARC P. MOSCRATI, , agent, person in charge at the time of service for ADVANCED CELL TECHNOLOGY, INC. at 381 PLANTATION ST, WORCESTER, MA. Fees: Service 30.00, Travel 3.84, Conveyance 2.00, Attest 5.00 & Postage and Handling 1.00, Total fees: $41.84

Deputy Sheriff Steven J Trottier

_____
**Deputy Sheriff**

**N.B. TO PROCESS SERVER:**

PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN THIS BOX

ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.

| , 20 |
| --- |

COMMONWEALTH OF MASSACHUSETTS

Worcester, ss.

**Superior Court**
Civil Action

No. 06-2538B

GUNNAR ENGSTROM ..................Plaintiff

v.

ADVANCED CELL TECHNOLOGY, INC. ..................Defendant

SUMMONS

(Mass. R. Civ. P. 4)

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION No. 06-2538B

..................................................

Gunnar Engstrom,     .

      Plaintiff,     .

      v.     .

Advanced Cell Technology, Inc.,     .

      Defendant.     .

..................................................

**FILED**

JAN 2 9 2007

ATTEST: _Del Helh_ CLERK

## NOTICE OF FILING NOTICE OF REMOVAL

To:    John O. Mirick, Esq.
      Mirick O'Connell, DeMallie & Lougee, LLP
      100 Front Street
      Worcester, MA  01608-1477

      Dennis P. McManus, Clerk of Court
      Worcester County Superior Court
      2 Main Street, Room 21
      Worcester, MA  01608

Notice is hereby given that on January 25, 2007, Advanced Cell Technology, Inc.,

defendant in the above-entitled action, filed in the United States District Court for the District of

Massachusetts a Notice of Removal of the above-entitled action to that Court from the Superior

Court of the County of Worcester, State of Massachusetts, pursuant to 28 U.S.C. § 1446.  A copy

of the Notice of Removal is attached hereto.

Notice is further given that on January 25, 2007, defendant filed this Notice of Filing

along with the Notice of Removal with the Clerk of the Superior Court of the County of

Worcester, Commonwealth of Massachusetts, as required by law.

{P0046571.1}

Respectfully Submitted,

Advanced Cell Technology, Inc.

By its Attorneys.

David A. Anderson, BBO No. 631392
Pierce Atwood LLP
One New Hampshire Avenue
Suite 350
Portsmouth, NH  03801
(603) 433-6300
(603) 433-6372 Fax
Dated:  January 25, 2007                          danderson@pierceatwood.com

### Certificate of Service

I, David A. Anderson, one of the attorneys for the defendant, hereby certify that on this, the 25th day of January, 2007, I caused to be served a copy of the foregoing upon all parties by filing electronically and causing a copy to be sent by courier to John O. Mirick, Esq., Mirick O'Connell, DeMallie & Lougee, LLP, 100 Front Street, Worcester, MA  01608-1477.

David A. Anderson

A true copy by photostatic process
Attest:
Asst. Clerk

{P0046571.1}

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

..............................................

Gunnar Engstrom,                          .
                                          .
              Plaintiff,                   .        C.A. No.
                                          .
              v.                           .
                                          .
Advanced Cell Technology, Inc.,            .
                                          .
              Defendant.                   .

..............................................

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. § 1446, Advanced Cell Technology, Inc. ("A.C.T."), defendant in the above-entitled action, hereby requests removal of a civil action, which was originally filed in Worcester County Superior Court, styled *Gunnar Engstrom v. Advanced Cell Technology, Inc.*, Civil Action No. 06-2538B.  As grounds therefor, A.C.T. represents:

1.      Plaintiff Gunnar Engstrom filed suit against A.C.T. on December 15, 2006.  In his suit, Engstrom alleges that A.C.T. breached a warrant agreement.  A.C.T. will deny these allegations in its answer.

2.      On December 27, 2006, A.C.T. was served with Engstrom's complaint, which is attached hereto as Exhibit A.  Accordingly, this Notice of Removal is timely under 28 U.S.C. § 1446(b).

3.      On information and belief, Engstrom is a resident of London, England.

4.      A.C.T. is a Delaware Corporation with its principal place of business in Los Angeles, California.

5.      In his complaint, Engstrom claims damages in excess of $100,000.

6.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

7.      Pursuant to 28 U.S.C.§ 1446(b), A.C.T. is simultaneously filing a copy of this Notice of Removal with the Worcester County Superior Court and as of this date is sending a copy to plaintiff's counsel.

8.      Pursuant to United States District Court for the District of Massachusetts Local Rule 81.1, A.C.T. will file in this Court certified or attested copies of all records and proceedings in the state court and a certified or attested copy of all docket entries in the state court.

WHEREFORE, Defendant respectfully requests that the above-captioned action be removed from the Massachusetts Trial Court, Worcester County Superior Court, to this Court.

Respectfully Submitted,

Advanced Cell Technology, Inc.

By its Attorneys,


/s/ David A. Anderson
David A. Anderson, BBO No. 631392
Pierce Atwood LLP
One New Hampshire Avenue
Suite 350
Portsmouth, NH 03801
(603) 433-6300
(603) 433-6372 Fax
Dated:  January 25, 2007                    danderson@pierceatwood.com

{P0138669.1}

- 2 -

## Certificate of Service

I, David A. Anderson, one of the attorneys for the defendant, hereby certify that on this, the 25th day of January, 2007, I caused to be served a copy of the foregoing upon all parties by filing electronically and causing a copy to be sent by courier to John O. Mirick, Esq., Mirick O'Connell, DeMallie & Lougee, LLP, 100 Front Street, Worcester, MA 01608-1477.

/s/ David A. Anderson
David A. Anderson

{P0138669 1}

# Notices
1:07-cv-10135 Engstrom v. Advanced Cell Technology, Inc.

### United States District Court

### District of Massachusetts

Notice of Electronic Filing

The following transaction was received from Anderson, David A. entered on 1/25/2007 at 3:02 PM EST
and filed on 1/25/2007

**Case Name:**      Engstrom v. Advanced Cell Technology, Inc

**Case Number:**    1:07-cv-10135

**Filer:**          Advanced Cell Technology, Inc.

**Document Number:** 1

**Docket Text:**
NOTICE OF REMOVAL by Advanced Cell Technology, Inc. from Worcester County Superior Court,
case number 06-2538B. ( Filing fee $ 350 receipt number 1382836) (Attachments: # (1) Exhibit A, State
Court Complaint# (2) Notice of Filing Notice of Removal# (3) Civil Cover Sheet)(Anderson, David)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** yes
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1029851931 [Date=1/25/2007] [FileNumber=1737629-0
] [3d84b59bac213642b7fa3483496b33829752b96dbf5e0f6be83cd9c8185cadcf83f
e5176489b04c1a3adb64f67933226ae6c46f947a049ee3aac0c8b60ecac3d]]

**Document description:** Exhibit A, State Court Complaint
**Original filename:** yes
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1029851931 [Date=1/25/2007] [FileNumber=1737629-1
] [90ccbff5880cdc4fb9235481665270dd04f8a3c70882426f1d13960d54c795819a0
d951c3da38511e43c221d705be6ae212046f7db0a6e99e47ad3d3ee2fcd9d]]

**Document description:** Notice of Filing Notice of Removal
**Original filename:** yes
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1029851931 [Date=1/25/2007] [FileNumber=1737629-2
] [28a6c7e450405a2fec9cc3a6a3db983f5883ec3dd878f3fe2af6e586a781ff3a151
d6e23b7739da122f8873fa7c546fd89f2e432784a786d28011e64b6631b01]]

**Document description:** Civil Cover Sheet
**Original filename:** yes
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1029851931 [Date=1/25/2007] [FileNumber=1737629-3
] [5a839978adf7ceb86ce8aafb16dfa291736006019e96c8e1019f7028d250cacf841
99804d6c923574e8bc62cc34412b7b629912daba900a2df9baab4d32cb45e]]

**1:07-cv-10135 Notice will be electronically mailed to:**

David A. Anderson     danderson@pierceatwood.com, kdallaire@pierceatwood.com

**1:07-cv-10135 Notice will not be electronically mailed to:**

Gunnar Engstrom
London

,

# COMMONWEALTH OF MASSACHUSETTS

Exhibit A

Worcester, ss.

Superior Court
Department of the Trial Court
of the Commonwealth
Civil Action

No. 06-2538B

A TRUE COPY ATTEST

DEPUTY SHERIFF
12-27-06

GUNNAR ENGSTROM,

Plaintiff(s)

v.

ADVANCED CELL TECHNOLOGY, INC.,

Defendant(s)

SUMMONS

* To the above-named Defendant: 381 Plantation Street, Biotech V, Worcester, MA 01605

You are hereby summoned and required to serve upon ....John O. Mirick, Esq. of Mirick O'Connell........................................................... plaintiff's attorney, whose address is ..100 Front Street, Worcester, MA 01608.......................... an answer to the complaint which is herewith served upon you, within 20 **days after** service of this summons upon you, exclusive of the day of service. If you fail to do so, judgement by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the SUPERIOR COURT Department of the Trial Court at WORCESTER either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13 (a), your answer must state as a counter-claim any claim which you may have against the plaintiff which arises out of the transaction of occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, BARBARA J. ROUSE,  . Esquire, at Worcester, the......20th.......... day of .....December.............................in the year of our Lord two thousand and .six,..............

Clerk

NOTES:
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to that particular defendant.

PLEASE CIRCLE TYPE OF ACTION INVOLVED: TORT -- MOTOR VEHICLE TORT — CONTRACT EQUITABLE RELIEF — CH. 93A — MEDICAL MALPRACTICE — OTHER.

* NOTICE TO DEFENDANT: You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein AND also file the original in the Clerk's Office, Superior Court, Room 21.

| CIVIL ACTION COVER SHEET | Trial Court of Massachusetts SUPERIOR COURT DEPARTMENT County: Worcester | Docket Number 06-2538 |
|---|---|---|

| PLAINTIFF(S) Gunnar Engstrom | DEFENDANT(S) Advanced Cell Technology, Inc. |
|---|---|

| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE<br>John O. Mirick, Esq., Mirick, O'Connell<br>100 Front St., Worcester, MA 01608<br>Board of Bar Overseers number: 349240 | ATTORNEY (if known) |
|---|---|

**FILED**

DEC 1 5 2006

ATTEST:

**Origin code and track designation**

Place an x in one box only:
[X] 1. F01 Original Complaint
[ ] 2. F02 Removal to Sup.Ct. c. 231, s.104 (Before trial) (F)
[ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)
[ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
[ ] 5. F05 Reactivated after rescript;relief from judgment/ Order (Mass.R.Civ.P. 60) (X)
[ ] 6. E10 Summary Process Appeal (X)

**TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| A99 | Contract-Stock Warrant | ( F ) | ( ) Yes ( X ) No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

**TORT CLAIMS**
**(Attach additional sheets as necessary)**

A. Documented medical expenses to date:
1. Total hospital expenses .............................................. $..............
2. Total Doctor expenses ............................................... $..............
3. Total chiropractic expenses ......................................... $..............
4. Total physical therapy expenses .................................... $..............
5. Total other expenses (describe) ..................................... $..............
                                                        Subtotal $..............
B. Documented lost wages and compensation to date ...................... $..............
C. Documented property damages to date ................................. $..............
D. Reasonably anticipated future medical and hospital expenses ......... $..............
E. Reasonably anticipated lost wages .................................. $..............
F. Other documented items of damages (describe)
                                                                 $..............
G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

                                                                 $..............
                                                    TOTAL: $..............

**CONTRACT CLAIMS**
**(Attach additional sheets as necessary)**
Provide a detailed description of claim(s): Defendant failed to register stock as required by Stock Warrant, resulting in delay in sale of stock, and sale at lower price
                                                    TOTAL $ 108,169

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT    None

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."
Signature of Attorney of Record _____    DATE: 12/15/06

A.O.S.C. 2003



COPY

## COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
WORCESTER DIVISION
CIVIL ACTION NO.   06-2538 P

GUNNAR ENGSTROM,
    Plaintiff

V.

ADVANCED CELL TECHNOLOGY, INC.,
    Defendant



COMPLAINT   FILED

DEC 1 5 2006

ATTEST

### Introduction

This is a complaint by Gunnar Engstrom for damages caused when Advanced Cell Technology, Inc. improperly placed a restriction on stock issued to Gunnar Engstrom when he exercised his stock warrants.

### Parties

1.    Gunnar Engstrom ("Engstrom") resides in London, England. He was formerly employed by Advanced Cell Technology, Inc., and worked out of the Worcester offices of Advanced Cell Technology, Inc.

2.    Advanced Cell Technology, Inc. ("ACT") is a duly organized corporation with a usual place of business in Worcester, Massachusetts.

### Claims

3.    Engstrom was employed by ACT in 2001 as the Chief Financial Officer to help manage a turnaround of ACT. The turnaround was successful. When ACT moved its headquarters to California after the turnaround, Engstrom decided to leave ACT. He negotiated

[H:\PA\L:r\20285\00001\A0919748.DOC]

a termination package with ACT that included a Warrant Agreement for warrants for 100,000

shares of common stock ("the Warrant Agreement"). A copy of the Warrant Agreement is

attached as Exhibit A.

4.     In his role as CFO, Engstrom was familiar with the other warrant agreements for

ACT stock. He was aware that they were subject to restrictions. The Warrant Agreement was

issued as part of a negotiated settlement following a dispute, where Engstrom alleged a breach of

his employment contract, including a promise for a substantially larger number of warrants for

shares that would be subject to restrictions. It was important to Engstrom, and a key point of the

settlement, that the shares issuable under the Warrant Agreement would not be subject to

restrictions.

5.     Engstrom negotiated a "piggy-back registration rights" provision in the Warrant

Agreement for the common stock to be issued upon exercise of his warrants. A "piggy-back

registration" is a procedure that applies when a corporation is filing a registration statement with

the Securities and Exchange Commission. In addition to the stock offering for which the

corporation is filing a registration statement, the stock to be issued upon exercise of the warrants

is "piggy-backed" onto the corporation's registration statement, at no expense to the holder of

the warrants. The "piggy-back registration rights" are in Section 7 of Engstrom's Warrant

Agreement.

6.     If stock is not registered, there are restrictions on when and how stock can be

traded.

7.     ACT agreed "to use its best efforts to prepare and file" a piggy-back registration

statement and "to cause such registration statement to become effective." ACT knew that

Engstrom was planning on exercising his warrants and selling his stock as soon as ACT filed a

registration statement. ACT knew that it was important to Engstrom that the stock become registered.

8.     Engstrom reasonably relied on ACT's agreement to register the stock to be issued upon exercise of his warrants, and signed the Settlement Agreement which was part of his termination package. ACT then issued the Warrant Agreement in April, 2005.

9.     After the issuance of the Warrant Agreement, ACT did file a registration statement. In breach of its obligations to Engstrom in the Warrant Agreement, ACT failed to exercise its best efforts to do a "piggy-back registration" of the stock to be issued when Engstrom exercised his warrants.

10.    In September, 2005, after the ACT registration, Engstrom exercised his warrants. ACT issued stock subject to Rule 144 restrictions, which prevent any sales within one year, and which limit the volume of shares that can be sold. As a result, Engstrom could not immediately sell the shares that he received by the exercise of his warrants.

11.    In September, 2005, when he exercised his warrants and wanted to sell his shares, the average selling price of ACT common stock was $2.54 a share. In March, 2006, when he was able to sell his shares, the average selling price was $1.35 a share. As a result, the total proceeds received by Engstrom from the sale of his shares were $108,169 less than he would have received if ACT has complied with its obligations under the Warrant Agreement for a "piggy-back registration" and issued unrestricted shares.

12.    As a result of ACT's breach of contract, Engstrom has suffered damages.

WHEREFORE, the plaintiff Gunnar Engstrom demands that this Court find that Advanced Cell Technology, Inc. has breached its contract, determine the damages sustained by

Gunnar Engstrom, and enter judgment against Advanced Cell Technology, Inc. for that amount,

together with interest and costs.

> GUNNAR ENGSTROM,
>
> By his attorney,
>
> John O. Mirick, BBO #349240
> Mirick, O'Connell, DeMallie & Lougee, LLP
> 100 Front Street
> Worcester, MA 01608-1477
> Phone: (508) 791-8500
> Fax:    (508) 791-8502

# ADVANCED CELL TECHNOLOGY, INC.
## WARRANT AGREEMENT

This Warrant Agreement certifies that Gunnar Engstrom (the "Holder"), is the owner of 100,000 warrants (subject to adjustment as provided herein), each of which represent the right to subscribe for and purchase from A.C.T. Holdings, Inc., a Nevada corporation (the "Company"), one share of the Company's common stock, $.001 par value, (such common stock, including any stock into which it may be changed, reclassified or converted, is herein referred to as the "Common Stock") ("Warrants") at the purchase price of $0.25 per share (subject to adjustment as provided herein) (the "Exercise Price").

**THE SECURITIES REPRESENTED BY THIS AGREEMENT HAVE NOT BEEN REGISTERED PURSUANT TO THE PROVISIONS OF THE SECURITIES ACT OF 1933 FROM REGISTRATION AS AMENDED ("ACT"), AND HAVE BEEN ISSUED IN RELIANCE UPON THE EXEMPTION, SPECIFIED IN SECTION 4(2) OF THE ACT AND RULE 506 OF REGULATION D PROMULGATED PURSUANT THERETO. WITHOUT SUCH REGISTRATION, SUCH SECURITIES MAY NOT BE SOLD, TRANSFERRED, ASSIGNED, PLEDGED, HYPOTHECATED OR OTHERWISE DISPOSED OF, EXCEPT UPON DELIVERY TO THE COMPANY AND ITS TRANSFER AGENT OF AN OPINION OF COUNSEL SATISFACTORY TO THE COMPANY AND ITS TRANSFER AGENT THAT SUCH REGISTRATION IS NOT REQUIRED FOR SUCH TRANSFER; OR THE SUBMISSION TO THE COMPANY OR ITS TRANSFER AGENT OF SUCH OTHER EVIDENCE AS MAY BE SATISFACTORY TO THE COMPANY AND ITS TRANSFER AGENT TO THE EFFECT THAT ANY SUCH TRANSFER SHALL NOT BE IN VIOLATION OF THE ACT, APPLICABLE STATE SECURITIES LAWS OR ANY RULE OR REGULATION PROMULGATED PURSUANT THERETO.**

The Warrants are subject to the following provisions, terms and conditions:

## 1. EXERCISE OF WARRANTS

**Exercise of Warrants.** The Warrants may be exercised by the Holder, in whole or in part (but not as to a fractional share of Common Stock), by surrender of this Warrant Agreement at the principal office of the Company located at 381 Plantation Street, Worcester, MA 01605 (or such other office or agency of the Company as may be designated by notice in writing to the Holder at the address of such Holder appearing on the books and records of the Company), with the appropriate form attached hereto duly exercised, at any time within the period of April 1, 2005 through April 1, 2010 (the "Exercise Period") and by payment to the Company by certified check or bank draft of the purchase price for such shares of the Common Stock or an election to exercise the warrants on a cashless basis. The Company agrees that the shares of Common Stock so purchased shall be deemed to be issued to the Holder as the record owner of such shares of Common Stock as of the close of business on the date on which the Warrant Agreement shall have been surrendered and payment made for such shares of Common Stock or the cashless exercise option is duly exercised. Certificates representing the shares of Common Stock so purchased shall be delivered to the Holder promptly and in no event later than ten(10) days after the Warrants shall have been so exercised. The Company shall be responsible for any damages caused as a direct result of a failure to deliver certificates on a timely basis.

[W0331693.1]



**EXHIBIT**

_A_

This Warrant Agreement is entered into pursuant to that certain Settlement Agreement dated as of January 28, 2005, by and among the Company and the Holder, and is subject to the provisions thereof.

## 2. ADJUSTMENTS AND NOTICES

**A. Adjustments.** The Exercise Price and the number of shares of Common Stock issuable upon exercise of each Warrant shall be subject to adjustment from time to time, as follows:

**(1) Stock Dividends; Stock Splits; Reverse Stock Splits; and Reclassifications.** In the event that the Company shall (a) pay a dividend with respect to its capital stock in shares of Common Stock, (b) subdivide its issued and outstanding shares of Common Stock, (c) combine its issued and outstanding shares of common stock into a smaller number of shares of any class of Common Stock or (d) issue any shares of its capital stock in a reclassification of the Common Stock (including any such reclassification in connection with a merger, consolidation or other business combination in which the Company is the continuing corporation) (any one of which actions is herein referred to as an "Adjustment Event"), the number of shares of Common Stock purchasable upon exercise of each Warrant immediately prior to the record date for such Adjustment Event shall be adjusted so that the Holder shall thereafter be entitled to receive the number of shares of Common Stock or other securities of the Company (such other securities thereafter enjoying the rights of shares of Common Stock pursuant to this Warrant Agreement) that such Holder would have owned or have been entitled to receive after the happening of such Adjustment Event, had such Warrant been exercised immediately prior to the happening of such Adjustment Event or any record date with respect thereto. An adjustment made pursuant to this Section 2A(1) shall become effective immediately after the effective date of such Adjustment Event retroactive to the record date, if any, for such Adjustment Event.

**(2) Adjustment of Exercise Price.** Whenever the number of shares of Common Stock purchasable upon the exercise of each Warrant is adjusted pursuant to Section 2A(1) of this Warrant Agreement, the Exercise Price for each share of Common Stock payable upon exercise of each Warrant shall be adjusted by multiplying such Exercise Price immediately prior to such adjustment by a fraction, the numerator of which shall be the number of shares of Common Stock purchasable upon the exercise of each Warrant immediately prior to such adjustment, and the denominator of which shall be the number of shares of Common Stock so purchasable immediately thereafter.

**(3) De Minimis Adjustments.** No adjustment in the number of shares of Common Stock purchasable pursuant to this Warrant Agreement shall be required, unless such adjustment would require an increase or decease of at least one percent (1%) in the number of shares of Common Stock purchasable upon an exercise of each Warrant; provided, however, that any adjustments which by reason of this Section 2A(3) are not required to be made shall be carried forward and taken into account in any subsequent adjustment. All calculations shall be made to the nearest full share.

**B. Notice of Adjustment.** Whenever the number of shares of Common Stock purchasable upon the exercise of each Warrant or the Exercise Price is adjusted, as herein

provided, the Company shall promptly notify the Holder in writing (such writing referred to as an "Adjustment Notice") of such adjustment or adjustments and shall deliver to the Holder a certificate of a firm of independent public accountants selected by the Board of Directors of the Company (who may be the regular accountants employed by the Company) or of the Independent Financial Expert, if any, which makes a determination of Current Market Value with respect to any such adjustment setting forth the number of shares of Common Stock purchasable upon the exercise of each Warrant and the Exercise Price after such adjustment, setting forth a brief statement of the facts requiring such adjustment and setting forth the computation by which such adjustment was made.

**C. Amendment of Warrant Agreement.** This Warrant Agreement may not be changed because of any change in the Exercise Price or in the number of shares of Common Stock purchasable upon the exercise of a Warrant. The Company may at the time in the Company's sole discretion make any change in the form of a warrant agreement that the Company may deem appropriate and that does not affect the substance thereof and any warrant agreement thereafter issued, whether in exchange or substitution for any outstanding warrant agreement or otherwise, may be in the form so changed.

**D. Notice to Holder of Record Date, Dissolution, Liquidation or Winding Up.** The Company shall cause to be mailed (by first class mail, postage prepaid) to the Holder notice of the record date for any dividend, distribution or payment, in cash or in kind (including, without limitation, evidence of indebtedness and assets), with respect to shares of Common Stock at least twenty (20) calendar days before any such date. In the event that at any time after the date hereof, there shall be a voluntary or involuntary dissolution, liquidation or winding up of the Company, then the Company shall cause to be mailed (by first class mail, postage prepaid) to the Holder at the Holder's address as shown on the books of the Company, at the earliest practicable time (and, in any event, not less than twenty (20) calendar days before any date set for definitive action), notice of the date on which such dissolution, liquidation or winding up shall take place, as the case may be. The notices referred to above shall also specify the date as of which the holders of the shares of Common Stock of record or other securities underlying the Warrants shall be entitled to receive such dividend, money or the property deliverable upon such dissolution, liquidation or winding up, as the case may be (the "Entitlement Date"). In the case of a distribution of evidence of indebtedness or assets (other than in dissolution, liquidation or winding up), if the Holder elects to exercise the Warrants in accordance with Section 1 of this Warrant Agreement and become a holder of the Common Stock on the Entitlement Date, the Holder shall thereafter receive the evidence of indebtedness or assets distributed in respect of shares of Common Stock.

**E. Fractional Interest.** The Company shall not be required to issue fractional shares of Common Stock on the exercise of the Warrants. If more than one Warrant shall be presented for exercise in full at the same time by the same holder, the number of full shares of Common Stock which shall be issuable upon such exercise shall be computed on the basis of the aggregate number of whole shares of Common Stock purchasable on exercise of the Warrants so presented. If any fraction of a share of Common Stock would, except for the provisions of this Section 2E be issuable on the exercise of the Warrants (or specified proportion thereof), the Company shall pay an amount in cash calculated by it to be equal to the then fair value of one share of Common Stock, based upon the average closing price of the Common Stock on the OTC Bulletin Board (or other exchange if the Common Stock

{W0328491 1}

3

becomes listed on an exchange) for the thirty (30) days preceding the date of determination , multiplied by such fraction computed to the nearest whole cent.

## 3. RESERVATION AND AUTHORIZATION OF COMMON STOCK

The Company covenants and agrees (a) that all shares of Common Stock which may be issued upon the exercise of the Warrants will, upon issuance, be validly issued, fully paid and nonassessable and free of all insurance or transfer taxes, liens and charges with respect to the issue thereof; (b) that during the Exercise Period, the Company will at all times have authorized, and reserved for the purpose of issue or transfer upon exercise of the Warrants, sufficient shares of Common Stock to provide for the exercise of the Warrants, and (c) that the Company will take all such action as may be necessary to ensure that the shares of Common Stock issuable upon the exercise of the Warrants may be so issued without violation of any applicable law or regulation, or any requirements of any domestic securities exchange upon which any capital stock of the Company may be listed; provided, however, that nothing contained herein shall impose upon the Company any obligation to register the Warrants or the Common Stock pursuant applicable securities laws. In the event that any securities of the Company, other than the Common Stock, are issuable upon exercise of the Warrants, the Company will take or refrain from taking any action referred to in clauses (a) through (c) of this Section 3 as though such clauses applied, mutatis mutandis, to such other securities then issuable upon the exercise the Warrants.

## 4. NO VOTING RIGHTS

This Warrant Agreement shall not entitle the Holder to any voting rights or other rights as a stockholder of the Company.

## 5. CALL OF WARRANTS BY THE COMPANY

The Company shall have the right to force the purchase, at the Exercise Price, of any or all Warrants on or after the date (the "Call Date") on which: (i) the price ("price" shall be determined by taking the average between the bid and ask prices over the preceding 30 day period) of the Company's common stock as reported on the Over the Counter Bulletin Board, or other nationally recognized exchange, as the case may be, equals or exceeds $3.17 per share; and (ii) the average trading volume of the Company's common stock on the Over the Counter Bulletin Board or other nationally recognized exchange, as the case may be, equals or exceeds 20,000 shares per day over the previous 30 day period, (collectively, the "Conditions to Call"). Should the Company determine that the Conditions to Call have been satisfied, the Company shall provide the Holder with written notice of its intent to call the warrants. The Holder shall have ten (10) days from the date appearing on such notice to exercise the Warrants as specified herein and tender the Exercise Price to the Company. If the Holder fails to exercise the warrants within the specified period, all Warrants issued in the name of Holder shall, without any other action by the Company, terminate.

## 6. EXERCISE OR TRANSFER OF WARRANTS OR COMMON STOCK

The Holder agrees to be obligated by any and all provisions with respect to any and all limitations, including limitations imposed by the Securities Act of 1933, as amended, regarding the Warrants and the shares of Common Stock or other securities issuable upon

{W0328493.1}                                          4

exercise of the Warrants. The Holder acknowledges and agrees that he or she is aware that
there are substantial restrictions on the transferability of the Warrants and the shares of
Common Stock or other securities issuable upon exercise of the Warrants. The undersigned
also acknowledges and 5 agrees that he or she shall be responsible for compliance with all
conditions on transfer imposed by a Securities Administrator of any state, province or
territory and for any expenses incurred by the Company for legal and accounting services in
connection with reviewing such a proposed transfer and issuing opinions in connection
therewith.

## 7. PIGGY-BACK REGISTRATION RIGHTS

Subject to the exceptions specified in this Section 7, in the event that the Company
decides to file a registration statement with the Securities and Exchange Commission
("Commission") pursuant to the 1933 Act, the Company shall use its best efforts to include in
that registration statement, for registration, all or any portion of the common stock issuable
upon exercise of these Warrants. The Company agrees to use its best efforts to prepare and
file with the Commission such amendments and supplements to the registration statement and
the prospectus used in connection with such registration statement necessary to comply with
the provisions of the 1933 Act and to cause such registration statement to become effective.
The Company shall pay all expenses and fees incurred by Holder in registering all or any
portion of the shares issuable upon exercise of these Warrants. The exceptions to the piggy-
back registration rights granted herein (i.e., Holder will not have the right to request that the
Company register the common stock underlying the Warrants) are as follows: (i) the
registration statement filed by the Company is related or a condition to a secondary offering
conducted by the Company; or (ii) the registration statement filed by the Company seeks to
register stock whose aggregate value (exclusive of the common stock issuable upon exercise
of the Warrants) is less than Ten Million Dollars ($10,000,000). Provided, however, that the
foregoing exceptions shall not apply in the event any shares of common stock (or shares of
common stock underlying warrants or options issued by the Company) held by directors,
officers or reporting persons under Section 16 of the Securities Exchange Act of 1934, as
amended, are registered in any such offering.

## 8. MERGERS, CONSOLIDATIONS, ETC.

Except as may otherwise be provided, if the Company shall merge or consolidate
with another corporation, the Holder shall thereafter have the right, upon exercise of the
rights specified in this Warrant Agreement and payment of the Exercise Price, to receive
solely the kind and amount of shares of stock (including, if applicable, Common Stock),
other securities, property or cash or any combination thereof receivable by a holder of the
number of shares of Common Stock for which this Warrant Agreement might have been
exercised immediately prior to such merger or consolidation (assuming, if applicable, that
the holder of such Common Stock failed to exercise its rights of election, if any, as to the
kind or amount of shares of stock, other securities, property or cash or combination thereof
receivable upon such merger or consolidation). B. In case of any reclassification or change of
the shares of Common Stock issuable upon exercise of (other than elimination or par value, a
change in par value, or from par value to no par value, or as the result of a subdivision or
combination of shares (which is provided for elsewhere herein), but including any

[W0326491 1]                                      5

reclassification of the shares of Common stock into two (2) or more classes or series of shares) or in case of any merger or consolidation of another corporation into the Company in which the Company is the surviving corporation and in which there is a reclassification or change of the shares of Common Stock (other than a change in par value, or from par value to no par value, or as a result of a subdivision or combination (which is provided for elsewhere herein), but including any reclassification of the shares of Common Stock, the Holder shall thereafter have the right, upon exercise hereof and payment of the Exercise Price, to receive solely the kind and amount of shares of stock (including, if applicable, Common Stock), other securities, property or cash or any combination thereof receivable upon such reclassification, change, merger or consolidation by a holder of the number of shares of Common Stock for which the rights specified in this Warrant Agreement might have been exercised immediately prior to such reclassification, change, merger or consolidation (assuming, if applicable, that the holder of such Common Stock failed to exercise its rights of election, if any, as to the kind or amount of shares of stock, other securities, property or cash or combination thereof receivable upon such reclassification, change, merger or consolidation).

## 10. RIGHTS AND OBLIGATIONS SURVIVE EXERCISE OF WARRANTS

The rights and obligations of the Company, of the Holder, and of the holders of shares of Common Stock or other securities issued upon exercise of the Warrants, specified in this Warrant Agreement shall survive the exercise of the Warrants.

Dated: ~~April 10, 2004~~   November 30, 2004

COMPANY

A.C.T. HOLDINGS, INC., a Nevada corporation

By: _____
William M. Caldwell, IV
Its Chief Executive Officer

HOLDER

_____
Gunnar Engstrom

{W0128493.1}                                    6